IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| MONTCLAIRE GUISHARD | : | CIVIL ACTION |
| --- | --- | --- |
| | : | |
| v. | : | |
| | : | No. 07-149 |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                        November 5, 2009

      Montclaire Guishard[1] asks this Court to grant his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Guishard asserts his conviction is invalid due to ineffective assistance of counsel, due process violations, and the introduction of evidence obtained pursuant to an unlawful arrest. Guishard amended his petition to include new allegations of racial judicial bias.

      For the reasons set forth below, this Court finds Guishard's claims meritless. Therefore, the Court will deny his habeas petition.

**FACTS**

      While working as a Department of Planning and Natural Resources (DPNR) conservation enforcement officer in the U.S. Virgin Islands, Guishard participated in a legitimate arrest at sea on January 13, 2003 (dubbed the "Benner Bay Lagoon Incident"). He and another law enforcement official stopped a boat containing at least 36 kilograms of cocaine and about 20 pounds of marijuana. One of the two men on the offending boat, Clifford Potter, jumped overboard and escaped to shore.

      Sometime before March 2003, Guishard received an initial payment of $5,000 from Craig Hendricks. Hendricks was the target of a federal investigation involving a money laundering and

---

[1] In his court filings, Guishard spells his first name "Montclair," however, the case caption uses "Montclaire." Guishard has not asked to alter the caption.

drug trafficking operation. In exchange for the money, Guishard agreed to "misidentify" Potter in the event that Potter was caught by law enforcement.[2]

On March 3, 2003, after monitoring several phone calls between Guishard and Hendricks and discovering Guishard's business card at Hendricks's home, federal investigators questioned Guishard about his relationship with Hendricks. Guishard mentioned he suspected Hendricks was a drug runner but had no proof. Guishard claimed he had no direct way of contacting Hendricks; at this time, the investigators had wiretap evidence that Guishard was able to contact Hendricks directly. In April 2003, Guishard was the target of a sting operation. Hendricks, who was arrested on April 5, cooperated with the government by arranging for Guishard to pick up the remainder of his bribe on April 6. In a recorded phone conversation, Hendricks informed Guishard where he could pick up the payment. The same day, Guishard – with the FBI covertly video recording his activities – followed Hendricks's instructions to retrieve an envelope containing $15,000.

Guishard was arrested and questioned. Police alleged he confessed to accepting a bribe for the purpose of "misidentifying" Potter, but when asked to write this confession, he refused. At various points during the questioning, he mentioned he was attempting to buy engine mounts for his car from Hendricks (who ran a business acquiring boat parts) and claimed he was in the process of investigating Hendricks.

During his trial, Guishard claimed, in addition to being on a protracted quest for engine parts, he had been running a secret investigation of Hendricks. Guishard testified the secrecy of his investigation was necessary due to his fear for his life, extreme zeal and personal ambition with

---

[2] Guishard claims he filled out a Notice of Inspection form indicating Hendricks had attempted to bribe him. The veracity of this claim was disputed at trial, as the date on the form Guishard produced was nearly unintelligible and he admits he did not submit it through the proper channels.

respect to his job, and ignorance of the law. Additionally, Guishard maintained he thought Hendricks was giving him engine mounts, not money, on the day of his arrest. In support of this story, Guishard's attorney presented testimony indicating Guishard was in search of engine mounts for his van, the unfiled Notice of Inspection form Guishard allegedly filled out, and the affidavit and warrant for Potter that Guishard drew up in late January.

On November 20, 2003, Guishard was convicted by jury of (1) conspiracy to possess cocaine with intent to distribute;[3] (2) bribery concerning programs receiving federal funds;[4] (3) false statements;[5] and (4) misprision of felony.[6] On April 14, 2004, Guishard was sentenced to a prison term of 235 months.

Guishard filed notice of appeal on April 15, 2005. He stated three grounds in support of his appeal: (1) abuse of discretion for permitting out-of-court statements; (2) plain error when determining the quantity of drugs related to his conviction; and (3) incorrect denial of motion for judgment of acquittal. On January 10, 2006, the U.S. Court of Appeals for the Third Circuit affirmed the lower court's decision on the first and third grounds and remanded for resentencing because the quantity of drugs had been calculated incorrectly. Guishard's sentence was reduced to a term of 120 months on July 19, 2007.

Guishard filed a petition for certiorari to the Supreme Court of the United States, citing civil rights violations pursuant to the separation of powers doctrine and Virgin Islands Organic Act of

---

[3] 21 U.S.C. § 846.

[4] 18 U.S.C. § 666(a)(1)(B).

[5] 8 U.S.C. § 1001.

[6] 18 U.S.C. § 4.

1954, 48 U.S.C. § 1541 *et seq*. The Supreme Court denied his petition on October 2, 2006.

Guishard filed the present petition pursuant to 28 U.S.C. § 2255 on November 20, 2007, and filed a supplemental amendment on June 19, 2009.

**DISCUSSION**

Under 28 U.S.C. § 2255, habeas relief may only be granted when an error of law or fact constitutes a fundamental defect which inherently results in a miscarriage of justice. *United States v. Eakman,* 378 F.3d 294, 297 (3d Cir. 2004). The purpose of § 2255 is to ensure individuals are not imprisoned in violation of the Constitution, not to review questions of guilt or innocence. *United States v. Garth,* 188 F.3d 99, 108 (3d Cir. 1999).

Guishard's habeas petition, including the supplemental amendment, alleges the following three grounds for relief. First, he claims his conviction is improper because it is based on evidence obtained pursuant to unlawful arrest. Guishard alleges his arrest was unlawful because federal agents wrongfully interrupted his one-man bribery sting operation, he had qualified immunity for his actions as a law enforcement officer in the field, and he was targeted due to his race. Second, Guishard claims he suffered violations of his due process rights as a result of judicial bias, jury bias, perjury, and *Brady* violations by the prosecution. Third, Guishard alleges ineffective assistance of counsel based on counsel's failure to timely file an affidavit alleging judicial bias, failure to file a motion to change venue under Federal Rule of Civil Procedure 21(a), and failure to object during the course of the trial regarding the admissibility of testimony related to Guishard's business connections to Hendricks. Guishard also claims he is entitled to an evidentiary hearing on these matters.

There is a one-year statute of limitations for habeas petitions filed pursuant to 28 U.S.C. § 2255. This period generally runs from the date on which judgment of conviction becomes final or

4

the date when facts supporting the petitioner's claims could reasonably have been discovered. 28 U.S.C. § 2255(f). Typically, a judgment does not become "final" until the Supreme Court affirms the defendant's conviction and sentence or denies a timely filed petition for certiorari. *Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999). If a defendant does not pursue a timely direct appeal to an appellate court, the conviction and sentence become final on the date on which the time for filing such an appeal expires. *Id.*

Guishard was resentenced on July 19, 2007, and filed his § 2255 motion on November 20, 2007. The statute of limitations for Guishard's § 2255 petition began to run on the date the time for filing an appeal of his new sentence expired. *See Barnett v. Carroll*, 514 F. Supp. 2d 619, 622 (D. Del. 2007) (noting, after resentencing, the petitioner's conviction became final on the date upon which the thirty-day period to appeal his new sentence expired). Thus, Guishard's motion is timely.

Guishard filed a supplemental amendment to this motion on June 19, 2009. Amendments are considered timely, even if they are filed after the statute of limitations has run, when the new claims "relate back" to the original filing because they arise from same conduct, transaction, or occurrence. Fed. R. Civ. P. 15(c); *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000). A district court may, in its discretion, permit such an amendment to provide factual clarification or amplification. *Id*.

Guishard generally restricts his amendment to provide factual clarification and amplification; however, his claims of racial discrimination are barred from review. While Guishard's discrimination claims constitute alleged violations of due process, they constitute new theories of relief and are based on new facts Guishard could have discovered at the time he filed his original petition. The conduct Guishard alleges occurred is entirely new. These claims therefore do not

5

"relate back"within the meaning of Rule 15(c).[7]

Guishard did not raise the issues listed above during his trial or during direct appeal. Generally, if a claim is not raised during direct review, it is procedurally defaulted and cannot be adjudicated during the habeas stage. *Withrow v. Williams*, 507 U.S. 680, 721 (1993). In addition, to obtain relief when no objection was made to an error at trial, a petitioner must show: "(1) cause excusing his double procedural default, and (2) actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Guishard asserts he suffered ineffective assistance of counsel, but does not address the prejudice element. Even assuming Guishard could show cause and prejudice, his claims are meritless.

As his first ground for relief, Guishard asserts his conviction was premised on evidence obtained pursuant to an unlawful arrest in violation of the Fourth Amendment. Federal courts may not consider Fourth Amendment claims in a habeas petition if the petitioner was already granted a full and fair opportunity to litigate those claims. *Stone v. Powell*, 428 U.S. 465, 482 (1976). The Third Circuit has held a "full and fair opportunity" means there must have had procedures by which

---

[7] Even if Guishard's discrimination claims were properly raised, however, Guishard's claims are meritless. In his amendment, Guishard alleges he was targeted by the judge, jury, and law enforcement because of his race. Guishard provides no evidence to support his allegation of discrimination. The record reveals no indication of racial targeting in the judge's comments. Guishard's claim relating to jury bias is best construed as a *Batson* claim. To succeed on a *Batson* claim, a petitioner must establish a prima facie case of purposeful discrimination by showing he is a member of a cognizable racial group and the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. *Abu-Jamal v. Horn*, 520 F.3d 272, 288 (3d Cir. 2008) (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986)). Since he has not provided any facts to support this claim, Guishard has failed to make out a prima facie case of jury discrimination. Moreover, any *Batson* claim is barred because Guishard failed to make a contemporaneous objection to the discriminatory use of peremptory challenges during jury selection. *Abu-Jamal*, 520 F.3d at 280-81. Guishard also claims his arrest was the product of unlawful targeting based upon race, but he again provides no evidence to support this assertion and the record reveals no indication of any kind of racial targeting.

a defendant could have litigated a Fourth Amendment claim. *See Hubbard v. Jeffes*, 653 F.2d 99, 103 (3d Cir. 1981); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980).

Guishard did not assert a Fourth Amendment violation during his four-day trial or during direct appeal, nor has he claimed he was prevented from raising the issue. This Court is thus barred from revisiting the constitutionality of Guishard's arrest. Moreover, Guishard's claim fails on the merits, as the facts he asserts do not provide a basis for considering his arrest was unlawful.

Guishard first claims his arrest was unlawful because it interrupted a sting operation that he was conducting to catch Hendricks and Potter in attempted bribery. As evidence of the existence of such an operation, Guishard points to the arrest warrant he obtained for Potter long before the actual bribe was offered. A jury was presented with this evidence during trial and heard Guishard's testimony regarding its significance; the jury had the opportunity to evaluate his story and chose to discredit Guishard. This Court will not second-guess the jury's findings. Furthermore, even taking the existence of an arrest warrant as proof of Guishard's private investigation of Hendricks, Guishard provides no legal authority suggesting the existence of his one-man investigation would render a separate, government-sanctioned investigation unlawful.

Guishard also asserts that his arrest was unlawful because he was entitled to qualified immunity during the course of his purported investigation by virtue of his status as a U.S.V.I. Territorial Law Enforcement Officer. The concept of qualified immunity is inapplicable in this context because the doctrine only protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The qualified immunity doctrine does not allow government officials to break the law with impunity. *See United States v. Lee*, 106 U.S. 196, 220

7

(1882) ("All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it."). Guishard's attempt to summon the doctrine of qualified immunity as a shield from criminal liability is thus unsuccessful.

As a second ground for overturning his conviction, Guishard alleges various due process violations during the course of his trial.

First, Guishard alleges the magistrate judge and federal judge presiding over his pretrial proceedings and trial, respectively, were biased towards Hendricks due to their personal relationship with him. Guishard believes this bias required the judges to recuse themselves.

Judges are obligated to disqualify themselves in proceedings in which their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) requires recusal if facts create the appearance of impropriety where "a reasonable person, knowing all of the circumstances, would harbor doubts as to the judge's impartiality." *Cooney v. Booth,* 262 F. Supp. 2d 494, 504 (E.D. Pa. 2003) (*citing In re Prudential Ins. Co. of Am.,* 148 F.3d 283, 343 (3d Cir. 1998)).

Guishard alleges the judges were biased because: (1) both judges do business with Hendricks's marine supply company; (2) the judges and Hendricks are part of the same yacht club; (3) Hendricks and the district judge were on a small boat together in 2002; (4) the magistrate judge informed Hendricks of federal surveillance of his drug dealings; (5) the magistrate judge informed Hendricks of an informant's identity, leading to his murder; and (6) the district judge telephoned Hendricks's attorney during a recess in Guishard's trial and told him Hendricks should exercise his Fifth Amendment right to refuse to testify.

Guishard's first three allegations merely hint at some relationship between the judges and Hendricks. Even taking these allegations as true, a reasonable person would not doubt the judges'

8

impartiality based on the fact they may have been acquainted with Hendricks. Moreover, the case built against Hendricks was separate from Guishard's case. Guishard gives no explanation for why a bias towards Hendricks would create partiality in the trial against Guishard.

The fourth and fifth allegations concern only the magistrate judge. Regarding Guishard's contention there are Title III wiretaps proving the magistrate judge informed Hendricks of the FBI investigation, Guishard does not state how he acquired this information or cite other sources to support this allegation. The basis of Guishard's fifth allegation is his claim he overheard a conversation in which Hendricks told a third party the magistrate judge had given him the name of an informant. Hendricks allegedly ordered the third party to kill the informant. Even assuming these entirely unsubstantiated claims are true, Guishard does not specify how communications between Hendricks and the magistrate judge, unrelated to Guishard's crimes, would result in some partiality in the pretrial proceedings against Guishard.

The sixth allegation concerns only the district judge, who, according to Guishard, telephoned Hendricks's attorney during a recess in Guishard's case to give legal advice to Hendricks. Guishard alleges this can be proven by examining "court records" and the "Judge telephone records from his office." Again, Guishard does not state how he acquired his information regarding the contents of the judge's telephone record, and he provides no independent verification of his claim. The trial transcript reveals the topic of Hendricks's participation in the trial arose several times, but does not suggest the district judge called Hendricks's attorney. The record merely suggests the judge did not think it was appropriate to compel Hendricks to testify under the circumstances.[8] These statements

---

[7] Hendricks apparently considered testifying, but the record reflects his attorney counseled him to assert his Fifth Amendment privilege. On the third day of Guishard's trial, Hendricks's attorney stated his client had only agreed to testify "before he consulted with me." Trial Tr. at 252. After

do not support Guishard's contention that the judge called Hendricks's attorney. Moreover, even if we were to assume the judge did make this call, it is once again unclear as to how this indicates any partiality in Guishard's trial. There is no reason to believe Hendricks's testimony would have exculpated Guishard. Thus, Guishard's first due process claim is meritless.

Guishard also alleges his due process rights were violated because his jury was biased. He notes jury members were drawn from a small community, most of whom knew of Guishard's role and reputation as a law enforcement officer. He additionally cites the newspaper coverage of his arrest that circulated in the local community prior to his trial. Neither of these complaints were raised during trial, and thus they are procedurally barred. Even if Guishard could show the cause and prejudice necessary to lift the procedural bar, his claim is meritless.

A juror who is regularly drawn and selected is presumed, in the absence of showing to the contrary, to be unbiased and otherwise qualified and competent to serve. *Virgin Islands v. Williams*, 476 F.2d 771, 774 (3d Cir. 1973). Community members' cognizance of a crime due to pretrial publicity does not alone render a trial by a jury drawn from such community unconstitutionally unfair. *United States v. De Peri*, 778 F.2d 963, 972 (3d Cir. 1985). Even if a juror has heard allegations of a defendant's guilt, he may sit if he is still capable of abandoning his prior impressions and rendering a fair verdict on the evidence. *United States v. Provenzano*, 620 F.2d 985, 995 (3d Cir. 1980). Prejudice of jurors based on publicity should be presumed only in cases where the influence of news media pervaded the proceedings. *Id.* A defendant challenging a juror's impartiality must demonstrate there is a reasonable probability the juror was actually biased.

---

learning Hendricks would not consent to testify, the judge remarked Hendricks "certainly can't be compelled to testify" because he is entitled to refuse under the Fifth Amendment. *Id.*

*Williams*, 476 F.2d at 774; *Kiernan v. Van Schaik*, 347 F.2d 775, 779 (3d Cir. 1965) (holding a jury's impartiality may not be assumed without inquiry). Responses given by jurors during voir dire are presumed truthful. *United States v. Copple*, 24 F.3d 535, 543 (3d Cir. 1994).

Guishard has provided no evidence to show any of his jurors were partial or media coverage of his case was pervasive. Four of the selected jury members either knew of the case, had interacted with Guishard, or both. All indicated they would have no trouble being fair or impartial, and Guishard has not given any reason why the jurors' statements should be rejected. Thus, Guishard has not met his burden of proof to demonstrate any of his jurors were biased.

For his third claim of a due process violation, Guishard alleges federal agents perjured themselves by misstating (1) the precise movements of his attorney before trial and her transportation of evidence; (2) the manner in which Guishard was handcuffed; and (3) whether the agents instructed Guishard to track down Hendricks on March 3, 2003.

A witness commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008). To establish perjury resulted in a due process violation, a defendant must show: (1) perjury was committed; (2) the government knew or should have known of the perjury; (3) the false testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict. *Id.* at 183.

Even assuming Guishard could show there was known perjury by government witnesses, which he cannot, there is no circumstance under which his allegations could possibly satisfy the fourth element of the test. Guishard contends Hendricks attempted to bribe him; any transfer of

11

evidence occurred much later, during the preparation of his trial, and could not reasonably have affected the jury's determination Guishard physically accepted the installments. Similarly, any correction regarding the manner in which Guishard was handcuffed to a table after being caught has no reasonable likelihood of affecting the verdict.

The third instance of perjury Guishard alleges similarly cannot affect the outcome of his case. By implying he was instructed by federal agents to track Hendricks down, Guishard attempts to lend legitimacy to his acceptance of money from Hendricks. Even if this Court were to assume Guishard was indeed instructed to find Hendricks, however, the fact Guishard covertly received two sums of money from Hendricks remains undisputed. Thus, even if the jury had heard Guishard was asked to find Hendricks, this could not have reasonably affected the verdict.

Guishard's fourth due process claim relates to several violations of the prosecution's duty to disclose evidence favorable to the defendant. Guishard alleges prosecutors did not disclose wiretaps of conversations involving Hendricks and a videotape of Hendricks stating the magistrate judge revealed the identity of a confidential informant. Due process requires the prosecution disclose evidence "material to either guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prevail on a *Brady* claim, a petitioner must prove the evidence was: (1) suppressed; (2) favorable; and (3) material to the defense. *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001). Evidence is considered material if there is a reasonable probability the outcome would have been different had the evidence been disclosed. *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Guishard only vaguely addresses the first of these elements; the second and third elements remain unaddressed. The two pieces of evidence which Guishard alleges were suppressed are neither favorable to him nor material to his defense, and therefore did not need to be disclosed under *Brady*.

Thus, Guishard's fourth due process claim is meritless.

Finally, Guishard advances several claims based on ineffective assistance of counsel. He alleges (1) his counsel failed to file a timely motion for change of venue; (2) his counsel failed to file a timely and sufficient affidavit pursuant to 28 U.S.C. § 144, which would have compelled the pretrial and trial judges recuse themselves; and (3) his counsel failed to object to the prosecutor's question during trial about Guishard doing business with Hendricks. Additionally, Guishard asserts counsel's ineffectiveness is the reason his Fourth Amendment and due process claims were not pursued at an earlier date.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) counsel's performance was deficient; (2) there was no strategic or reasonable basis for the performance; and (3) the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). An ineffective assistance of counsel claim requires a petitioner to make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991). There is a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

For each of Guishard's three claims of ineffective counsel, he does not indicate any actual prejudice occurred in his case. As previously discussed, this Court has established Guishard's verdict would not have changed given a different venue or a different set of judges. Similarly, an objection regarding his business connections with Hendricks would have had no effect, since Guishard spent much of his trial attempting to characterize his interactions with Hendricks as legitimate business interactions. Counsel cannot be deemed ineffective for failing to make the same invalid arguments Guishard raises in his habeas petition.

Finally, Guishard argues he is entitled to an evidentiary hearing on his habeas petition. The reviewing court shall hold an evidentiary hearing unless the petition and case files make clear the prisoner is not entitled to relief. *United States v. Nino*, 878 F.2d 101, 103 (3d Cir.1989). This evaluation is within the sound discretion of the district court. *Id.* This Court, after examination of the petition and case records, finds Guishard is entitled to no relief, and thus no evidentiary hearing is necessary.

For the foregoing reasons, Guishard's petition for a writ of habeas corpus is denied. An appropriate order follows.